**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BARRY MERRITT,

                      Plaintiff,

v.                                    CIVIL ACTION NO.   2:22-cv-00556

LUCAS CASTO and
JACKSON COUNTY COMMISSION,

                      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Partial Motion to Dismiss* (Document 7), the

corresponding *Defendant's Memorandum of Law in Support of Partial Motion to Dismiss*

(Document 8), the *Plaintiff's Response in Opposition to Defendants' Partial Motion to Dismiss*

(Document 14), the *Defendants' Reply in Support of Partial Motion to Dismiss* (Document 16),

the *Complaint* (Document 1), and all attached exhibits.   For the reasons stated herein, the

Defendants' motion should be granted in part and denied in part.

**FACTUAL BACKGROUND**

The Plaintiff, Barry Merritt, initiated this action on December 6, 2022.[1]   The Defendants

are the Jackson County Commission (JCC) and Lucas Casto, a deputy with the Jackson County

Sheriff's Office.   The Plaintiff brought this action alleging that the Defendants are liable for the

---

[1] For the purpose of this motion to dismiss, the Court will treat the factual allegations contained in the Complaint as true.   *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

personal injuries he suffered in connection with the use of excessive force by Deputy Casto on January 13, 2021.

On January 26, 2020, the Plaintiff was in a vehicle stopped by Deputy Casto, and during the subsequent search, a joint of marijuana was found on his person.   Mr. Merritt was arrested but thereafter released from custody.   Nearly a full year later, on January 11, 2021, Deputy Casto filed a criminal complaint charging the Plaintiff with misdemeanor possession of a controlled substance. The Magistrate found probable cause and issued an arrest warrant for Mr. Merritt.

Two days later, on January 13, 2021, Deputy Casto and other employees of JCC executed the arrest warrant at the Plaintiff's home in Ripley, West Virginia.   Those entering Mr. Merritt's house did not knock or announce their entry.   (Compl. at ¶ 11.)   When Deputy Casto and others entered Mr. Merritt's house, the Plaintiff was on the phone with a medical provider.   When the Plaintiff saw Deputy Casto and others, they had drawn their firearms and were pointing them at him.   (*Id.* at ¶ 12.)   Mr. Merritt was verbally instructed to "get down on the ground" but he was not given an opportunity to comply and was immediately tackled.   (*Id.* at ¶ 13.)   The Plaintiff was then "roughly cuffed."   (*Id.* at ¶ 14.)   As a proximate result of the conduct during this arrest, Mr. Merritt suffered several injuries.   His injuries included several fractured ribs, hemothorax,[2] severe bullous emphysema,[3] and pneumothorax.[4]

The Plaintiff alleges that Deputy Casto had a history of violent misconduct and his employer, JCC, knew of this history.   JCC knew of this history because of prior citizen complaints.   (*Id.* at ¶ 41.)   Based on JCC's knowledge of Deputy Casto's history, the Plaintiff

---

[2] Hemothorax is the pooling of blood between the chest wall and the lungs.
[3] Bullous Emphysema occurs when the lungs' air sacs, alveoli, swell to form large air spaces.
[4] A pneumothorax is a collapsed lung.

alleges that it failed to properly train and supervise him and was negligent in hiring and retaining him.   Additionally, the Plaintiff states that Deputy Casto's behavior was a direct result of the customs and policies of JCC, whether those policies are written or unwritten.   (*Id.* at ¶ 40.)   These policies would include JCC's refusal to act regarding the excessive force complaints against Deputy Casto, thereby creating a "custom of acceptance and encouragement of the use of excessive force."   (*Id.* at ¶ 43.)

The Complaint contains the following causes of action: Count I – Excessive Force in Violation of the Laws and Constitutions of West Virginia and the United States, as to Deputy Casto; Count II – Reckless Conduct in Violation of Clearly Established Laws, as to JCC; Count III – Deprivation of Rights in Violation of 42 U.S.C. § 1983, as to Defendants Deputy Casto and JCC; Count IV – State Law Claims for Outrage, as to Defendants Deputy Casto and JCC; and Count V – Punitive Damages, as to Deputy Casto.   The Plaintiff requests compensatory damages for pain and suffering, special damages for future medical care and lost earnings, prejudgment and post judgment interest, attorney fees and costs, and punitive damages.   (*Id.* at 10.)

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct."   Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint,

4

"articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A. *Count I – Excessive Force in Violation of the Laws and Constitutions of West Virginia and the United States*

The Plaintiff alleges that Deputy Casto used excessive force against him in executing the arrest on January 13, 2021. Because excessive force is prohibited by the constitutions of the United States and West Virginia, the Plaintiff states that Deputy Casto is liable for the injuries suffered as a result of the arrest. In their motion to dismiss, the Defendants raise two arguments. First, they argue that no private cause of action for damages exists in connection with the relevant provisions of the West Virginia Constitution and because the Plaintiff requests only damages, such a claim should be dismissed. Second, Defendants argue that Count I is "wholly duplicative" of Count III and should therefore be dismissed.

#### *(1) No Cause of Action for Money Damages Under the West Virginia Constitution*

The Defendants argue that it is now settled that the West Virginia Constitution does not create a private right of action for monetary damages for excessive force claims, and because the Plaintiff is asking for monetary damages under the West Virginia Constitution, the claim should be dismissed. In response, the Plaintiff argues that "Mr. Merritt's request for a remedy that may

prove unavailable is not fatal to the claim . . . particularly when the request is intertwined with another viable remedy."  (Pl.'s Resp. at 8) (Document 14.)

The Supreme Court of Appeals of West Virginia has stated that "[c]laims of excessive force by police officers in the course of arrest are governed by the standards of the search and seizure clause contained in West Virginia's Constitution, Article III, Section 6."  *Stepp v. Cottrell on behalf of Est. of Cottrell*, 874 S.E.2d 700, 707 (W. Va. 2022).  Section 6 of Article 3 of the West Virginia Constitution states that the citizens' right "to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated."  In interpreting that provision, the Supreme Court of Appeals of West Virginia held that it does not create "a private right of action for monetary damages."  Syl. Pt. 3, *Fields v. Mellinger*, 851 S.E.2d 789 (W. Va. 2020).

The Plaintiff does not deny that the Complaint requests only monetary relief but argues that "an improper remedy is not fatal to the sufficiency of a claim on a motion to dismiss."  (Pl.'s Resp at 8) (citing *Mays v. Cabell County Bd. of Educ.*, 2022 WL 17637616, at *5 (S.D. W. Va. Dec. 13, 2022) (Chambers, J.)).  "The sufficiency of the pleading is tested by . . . the claim for relief," not the request for relief, itself.  5 A. Benjamin Spencer, *Federal Practice and Procedure* § 1255 (4th ed. 2022).  Stated otherwise, to determine whether a pleading is sufficient upon a motion to dismiss, a court looks to the "statement of the claim showing the pleader is entitled to relief" under Rule 8(a)(2) of the Federal Rules of Civil Procedure, not the "demand for relief sought" under Rule 8(a)(3). See also *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) ("A court therefore should not dismiss a complaint so

long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, even if that relief is not specifically requested." (Emphasis added)).

Although the Defendants are correct in their assertion that the Plaintiff cannot recover monetary damages pursuant to Count I, other relief may still be available to the Plaintiff.   The fact that the Plaintiff's *ad damnum* clause requests solely monetary damages does not render the pleadings insufficient.   Accordingly, dismissal of Count I, on this ground, is inappropriate.

### *(2) Count I is Duplicative of Count III*

The Defendants argue that "to the extent that Count I is premised upon the Fourth Amendment [of Constitution of the United States], it is wholly duplicative of Count III," and therefore should be dismissed pursuant to Rule 12(b). (Def.'s Memo. at 17.)   The Plaintiff responds by stating that the allegations within Count I are, in fact, distinct but complementary to, those presented in Count III.[5]

A motion to dismiss is not the proper means of eliminating duplicative counts.   "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   The Court's inquiry focuses on whether the Plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft*, 556 U.S. at 663.   Although the

---

[5] The Plaintiff refused to further clarify this response.   Although unclear, it does seem that Count I and Count III contain at least some overlap, especially regarding violations of the Fourth Amendment.   Count I states that "under 42 U.S.C. § 1983 *and* similar doctrines adopted by the State of West Virginia, Deputy Casto is liable for the damages inflicted upon Barry Merritt."   (Compl. at ¶ 28) (emphasis added.)   Count III states that "[t]he allegations specifically set forth in Count I above not only state a claim for relief against Deputy Casto under the laws of the State of West Virginia, but also under § 1983."   (*Id.* at ¶ 38).   Reading the two together, it seems that Count I and Count III both raise claims under § 1983 for excessive force.   Had the Plaintiff's claim under the West Virginia Constitution been dismissed, the existing pleadings would make it difficult to conclude that Counts I and III are not "wholly duplicative."

7

Defendants argue that Count I is "wholly duplicative," they do not argue that Count I alleges insufficient facts to state a claim for excessive force.   Again, dismissal of Count I is inappropriate.[6]

### B.  Count II – Reckless Conduct in Violation of Clearly Established Laws

In Count II, the Plaintiff alleges that JCC is (1) vicariously liable for the actions of Deputy Casto and (2) liable for its negligence in hiring, retaining, training and supervising Deputy Casto. As alleged by the Plaintiff, JCC's failures as an employer included "failing to follow adopted and implemented policies" and simultaneously "implementing customs . . . demonstrating indifference to the use of excessive force."   (Compl. at ¶ 32.)   The Defendants argue that JCC is not liable under Count II (1) because of various statutory immunity provisions, namely West Virginia Code §§ 29-12A-4, 29-12A-5(a)(4) and 29-12A-5(a)(5), and (2) because the Plaintiff has failed to allege sufficient facts to support such claims.

The Plaintiff agrees that JCC is not liable for the intentional acts of its employees.   (Pl.'s Resp. at 4–5.)   As to the claims for negligent hiring, retention, training, and supervision, contained in Count II, the Plaintiff argues that "Mr. Merritt's Complaint, when evaluated in its entirety, asserts sufficient facts to satisfy the notice pleading requirements."   (*Id.* at 4.)   The Plaintiff continues by arguing that the Complaint adequately states a *Monell* claim,[7] citing previous actions

---

[6] The elimination of duplicative counts is best accomplished via a motion to strike under Rule 12(f).  *See, e.g.*, *Stratton v. Arch Coal, Inc.*, 2017 WL 2312840, at *3 (S.D. W. Va. May 26, 2017) (Berger, J.); *Preziosi v. U.S.*, 2012 WL 2798771, at *5 (D. Md. July 9, 2012).   Federal Rule of Civil Procedure 12(f) states the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Even then, a motion to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action."   5C Arthur R. Miller, A. Benjamin Spencer, *Federal Practice & Procedure* § 1382 (3d ed. 2022); *see also Waste Mgt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001); *U.S. v. Gwinn*, 2006 WL 3377636, at *1 (S.D. W. Va. Nov. 20, 2006) (Johnston, J.); *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W. Va. 1993) (Haden, C.J.).

[7] The Court notes that the Defendants moved to dismiss Count II and Count III, seemingly treating Count II as a state law claim and Count III as a *Monell* claim.   Count II is titled "Reckless Conduct in Violation of Clearly Established

8

and complaints for excessive force involving Deputy Casto, the adoption of policies approving use of force similar to that which caused the Plaintiff's injuries, and failure to train officers to protect constitutional rights.   The Plaintiff further argues that the negligent hiring, retention, training, and supervision claims are established because both the prior civilian complaints about Deputy Casto and the incident with the Plaintiff itself "support the inference that Casto was not being adequately trained, supervised, or disciplined."   (*Id.* at 6–7.)

The Defendants reply that the Plaintiff has failed to respond to the specific arguments raised in their motion to dismiss, namely the arguments that JCC is entitled to immunity under West Virginia Code §§ 29-12A-1, *et seq.*, and the lack of allegations to support the negligence claims.   (Def.'s Reply at 2.)   The Defendants assert that these arguments should be deemed conceded.   However, the Fourth Circuit has a "strong policy that cases be decided on the merits." *U.S. v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993).   Given that a motion to dismiss tests the legal sufficiency of the complaint and dismissal for failure to respond is within a trial court's discretion, this Court refuses to deem the Plaintiff's failure to respond to the Defendants' specific arguments as a concession.   *See, e.g.*, *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 408

---

Laws," and is brought as to JCC.   It contains allegations regarding JCC's negligent hiring, retention, training, and supervision of Deputy Casto and its tacit approval of unconstitutional conduct.   Count III is entitled "Deprivation of Rights in Violation of 42 U.S.C. § 1983," and is alleged against both Defendants.   Count III contains allegations regarding JCC's customs and policies, as well as its knowledge of a pattern of use of excessive force by officers.

The Plaintiff's response muddies the waters.   The Plaintiff's argument that "factual allegations of failures and omission by JCC and its employees . . . meet the . . . requirements for a claim pursuant to *Monell*" appears to be a response to the Defendants' arguments to dismiss Count III, not Count II.   (Pl.'s Resp. at 5.)   The Plaintiff then goes on to support his argument for the sufficiency of the *Monell* claim by citing allegations contained within Count III, as opposed to Count II.   (*Id.* at 6–7.)   What is more, nowhere within the allegations of Count II does the Plaintiff mention *Monell* or § 1983. Rather, those allegations are contained in Count III.   Therefore, for purpose of the motion to dismiss, the Court will address Count II as a state law claim for negligent hiring, retention, training, and supervision and Count III as a *Monell* claim.

9

(4th Cir. 2010).   Therefore, the question remains as to whether the Plaintiff has plausibly stated a claim against JCC for negligent hiring, retention, training, and supervision.

   *(1) Statutory Immunity under West Virginia Code § 29-12A-1, et seq.*

   The Defendants first argue, and the Plaintiff concedes, that West Virginia Code § 29-12A-4 and *Zirkle v. Elkins Rd. Pub. Serv. Dist.* preclude the Plaintiff from asserting a theory of vicarious liability against JCC for the alleged intentional actions of Deputy Casto. 655 S.E.2d 155, 160 (W. Va. 2007). It is apparent from the factual allegations within the Complaint that Deputy Casto intended the consequences of his actions, and "a mere allegation of negligence does not turn an intentional tort into negligent conduct." *Weigle v. Pifer*, 139 F. Supp. 3d. 760, 780 (S.D. W. Va. 2015) (Copenhaver, J.).   Therefore, insofar as Count II alleges the vicarious liability of JCC for the actions of Deputy Casto, dismissal is appropriate.

   Next, JCC argues that it is immune with respect to the claims of Count II based upon West Virginia Code § 29-12A-5(a)(4), which states "a political subdivision is immune if a loss or claim results from . . . adoption or failure to adopt a[n] . . . ordinance, resolution, rule, regulation or written policy." The Defendants state that the Plaintiff's claim "directly emanates from an alleged failure to adopt regulation or written policy." However, a review of the Plaintiff's Complaint reveals that Count II independently rests on allegations that JCC negligently hired, retained, trained, and supervised Deputy Casto, despite complaints of his previous use and threats of excessive force. These allegations cannot fairly be characterized as resulting from the failure to adopt an ordinance, resolution or rule or a *failure to adopt regulation or written policy*. No immunity under § 29-12A-5(a)(4) is, therefore, appropriate.

Further, JCC posits that it has immunity with respect to Count II based upon the "law enforcement exception" contained in West Virginia Code § 29-12A-5(a)(5).   (Def.'s Memo. at 6.) In applying this provision, the West Virginia Supreme Court of Appeals has given political subdivisions immunity "if a loss or claim results from the failure to provide [police] protection or the method of providing [police] protection regardless of whether such loss or claim . . . is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment."   *Albert v. City of Wheeling*, 792 S.E.2d 628, Syl. Pt. 4 (W. Va. 2016). In effect, the statute immunizes political subdivisions "from the negligent actions of their employees in providing police protection."   *Daniels v. Wayne County*, 2020 WL 2543298, at *4 (S.D. W. Va. May 19, 2020) (Chambers, J) (citing *Taylor v. Clay Cnty. Sheriff's Dept.*, 2020 WL 890247, *6 (S.D. W. Va. Feb. 24, 2020) (Johnston, C.J.)) (emphasis added). Again, however, Count II alleges negligence of JCC, itself, in hiring, retaining, training, and supervising Deputy Casto, as opposed to its employees' negligence[8] in providing police protection.

The alleged failure to properly hire, train, supervise, and retain Deputy Casto does not fall within the ambit of the "implementation of a police policy," and, therefore, the Defendant is not entitled to immunity under § 29-12A-5(a)(5).   This Court has previously held similarly, finding that § 29-12A-5(a)(5) "does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee."   *Brown v. Mason County Commn.*, 2019 WL 6654124, at *8 n.6 (S.D. W. Va. Dec. 5, 2019) (Chambers, J.) (citing *Woods v. Town of Danville*, W.V., 712 F. Supp. 2d 502, 514 (S.D. W. Va. 2010) (Goodwin, C.J.).

---

[8] As the Defendants have argued above, the alleged acts of Deputy Casto and others were not negligent, but rather, intentional actions for which JCC is entitled to immunity under West Virginia Code 29-12A-4. (Def.'s Memo. at 5.)

*(2) Failure to Plead Sufficient Facts to State Negligent Hiring, Retention, Training, and Supervising Claims*

The Defendants argue that even if statutory immunity does not apply, "the Plaintiff has not alleged sufficient facts to plausibly state" claims of negligent hiring, retention, training, and supervision.  (Def.'s Memo. at 8.)   The Plaintiff broadly responds that he has sufficiently pled his claim.   The Court will address Mr. Merritt's negligent hiring and retention claims before addressing his negligent training and supervision claims.

With respect to the negligent hiring and retention claim, the Defendants state that such a claim "requires the Plaintiff to show some deficiency in the investigation or foresight of the employer," and argue the Plaintiff has failed to do so.   (*Id.* at 9.)   To prevail on a negligent hiring or retention claim, the Plaintiff must establish that the employer failed "to conduct a reasonable investigation into the employee's background vis a vis the job . . . and the possible risk of harm." *State ex rel. W. Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997); *see also McCormick v. W. Virginia Dept. of Pub. Safety*, 503 S.E.2d 502, 506 n.5 (W. Va. 1998). Otherwise stated, the question is: "should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?"   *Id.*   An "employer's duty is heightened when the prospective employee is a police officer."   *Fields v. King*, 576 F. Supp. 3d 392, 406 (S.D. W. Va. 2021) (Johnston, C.J.) (citing *Woods*, 712 F. Supp. 2d at 514).

The Plaintiff has pled sufficient facts to establish a claim of negligent hiring and/or retention.   It is alleged that JCC hired and retained Deputy Casto despite the knowledge that he had engaged in "dangerous misconduct . . . that involved the unnecessary use of force and unnecessary threats of lethal force prior to the incident involving Barry Merritt."   (Compl. at ¶ 33.)   Also, it is alleged that a reasonable supervisor would have known that this misconduct was

12

a violation of the constitutional rights of others and, if he was hired/retained, would result in future such incidents.  (*Id.* at ¶ 34.)   Therefore, accepting the allegations as true and drawing all reasonable inferences in favor of the Plaintiff, he has sufficiently pled that JCC should have reasonably foreseen the risk of harm caused by hiring or retaining Deputy Casto.

JCC argues that it cannot be liable for negligent retention because a county commission does not have the statutory authority to terminate employees of other elected officials and cites *Billiter v. Jones* and West Virginia Code § 7-7-7(h) in support. (3:19-cv-0288, 2020 WL 5646901, at *4 (Chambers, J.))   Section 7-7-7(h) states that a "county official named in this section *shall* have the authority to discharge any of his or her assistants, deputies or employees by filing with the clerk of the county commission a discharge statement specifying the discharge action."   W. Va. Code § 7-7-7(h) (emphasis added).   The language of § 7-7-7 does not state that the elected officials have sole authority to terminate employees.   Rather, § 7-7-7 outlines that an elected official *may* terminate an employee.   Moreover, case law clearly indicates that a "county commission does, in fact, have the legal right to terminate an employee of an official listed in West Virginia Code § 7-7-7."   *Nichols v. County Commn. of Cabell County*, CV 3:18-0266, 2018 WL 4016311, at *7 (S.D. W. Va. Aug. 22, 2018) (Chambers, J.) (citing *Burke v. Wetzel County Commission*, 815 S.E.2d 520 (W. Va. 2018)); see also *Billiter v. Jones*, 3:19-cv-288, 2020 WL 118595, at *2 (S.D. W. Va. Jan. 9, 2020) (Chambers, J.)

The Defendants argue that the Plaintiff has not alleged sufficient facts to indicate that JCC failed to properly train or supervise Deputy Casto.   The Plaintiff responds that the Complaint contains sufficient factual allegations to support a claim of negligent training and supervision, in

part, because "prior civilian complaints about Casto support the inference that Casto was not being adequately trained, supervised, or disciplined."   (Pl.'s Resp. at 6.)

"Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another."   *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 818 (S.D. W. Va. 2012) (Copenhaver, J.) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W.Va. 128, 538 S.E.2d 719, 725 (2000)).

The Plaintiff's negligent training and supervision claims are adequately alleged for the same reasons that his claims of negligent hiring and retention are adequate.   The Complaint states that JCC was on notice that Deputy Casto had a history of violent conduct, amounting to unnecessary force and threats of force.   It also alleges that, despite this knowledge, JCC failed to take action to train and supervise Deputy Casto, and this failure resulted in the injury.   Such allegations are adequate to survive a motion to dismiss.   *See, e.g.*, *Fields v. King*, 576 F. Supp. 3d 392, 407 (S.D. W. Va. 2021) (Johnston, C. J.); *see also*, *B.E. v. Mt. Hope High Sch.*, 2:11-CV-00679, 2012 WL 3580190, at *7 (S.D. W. Va. Aug. 17, 2012) (Goodwin, C.J.) (actual notice of similar instances of predatory behavior is sufficient to establish a duty to take reasonable supervisory action).

The Defendants state that it is "a predicate prerequisite that the supervised employee's underlying conduct must also be *negligent*."   *Greene v. Putnam County Commn.*, 3:21-cv-520, 2022 WL 16857014, at *9 (S.D. W. Va. Nov. 10, 2022) (Chambers, J.).   The Defendants argue that because all the allegations of Deputy Casto's conduct are *intentional* acts the negligent supervision claim cannot stand.

14

A court sitting in diversity has "an obligation to interpret the law in accordance with the [state's highest court], or where the law is unclear, as it appears that the [state's highest court] would rule." *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999). "To forecast a decision of the state's highest court we can consider, inter alia: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Id.* at 528. Clearly, the West Virginia Supreme Court of Appeal's decisions, related to the Defendants' argument on the negligent supervision claim, are ambiguous.

In the case of *Taylor v. Cabell Huntington Hosp., Inc.*, in which the plaintiff alleged a nurse's negligence, the West Virginia Supreme Court of Appeals stated that the plaintiff's negligent supervision claim against her employer was moot because the jury found the plaintiff had failed to establish that the employee nurse's negligence caused the plaintiff's injury. 538 S.E.2d 719, 725 (W. Va. 2000). There were no allegations that the nurse's conduct was intentional and, therefore, no opportunity for the court to discuss an employee's intentional versus negligent conduct.

Then, in June 2021, in the case of *C.C. v. Harrison County Bd. of Educ.*, the West Virginia Supreme Court of Appeals stated that its current position relative to a negligent supervision claim requires that the supervisee's wrongful conduct be negligent, and intentional tortious conduct by a supervisee cannot form the basis of a negligent supervision claim. 859 S.E.2d 762, 774–75 (W. Va. 2021). The Supreme Court relied, at least in part, on the *Taylor* decision. This case is the basis of JCC's argument that Deputy Casto's intentional conduct cannot support a negligent supervision claim.

In the 2022 case of *Jones v. Logan County Board of Education*, the court seemingly distanced itself from *C.C.*, and found that a negligence claim against board of education employee had been sufficiently pled where allegation was that employee failed to stop bullying of a school child. 881 S.E.2d 374, 385 (W. Va. 2022) (a principal owed a duty of protection/supervision when the principal knew a child was exposed "to the high risk of harm posed by the intentional misconduct of school bullies."); *see also Ayersman v. Wratchford*, 874 S.E.2d 756, 771–72 (W. Va. 2022) (it is a question of fact whether supervisors could use qualified immunity to avoid liability under a negligent supervision theory when the employee's conduct allegedly amounted to malicious prosecution and abuse of process).   If the holding in *C.C.* is strictly followed, it would constitute a sharp departure from the basic tenets of negligence.[9]   Accepting that the court engaged in such a sharp departure without thorough review and an announced syllabus point[10] would necessarily require accepting the fall of historical practice and precedent.

A review of *Jones*, decided after *C.C.,* makes it apparent that the court did not intend for the holding in *C.C.* to be binding outside of the facts of that case.[11]   Thus, this Court finds, in forecasting a decision of the West Virginia Supreme Court of Appeals, that the Plaintiff has

---

[9] Generally, a duty to protect others from the intentional conduct of third parties arises when "affirmative actions or omissions unreasonably created or increased the risk of injury." *Est. of Hough ex rel. Lemaster v. Est. of Hough ex rel. Berkeley Cnty. Sheriff*, 519 S.E.2d 640, 647 (1999).   Decisions prior to *C.C.* allowed for supervisory liability when the supervisee committed an intentional tort. *See e.g. Doe v. Logan County Bd. of Educ.*, 829 S.E.2d 45, 50 (W. Va. 2019) (holding that a claim for negligent supervision against a school board could survive when the plaintiff sufficiently alleged that the board had knowledge of a teacher's grooming but failed to intervene to prevent the teacher's sexual harassment of the plaintiff).

[10] *State v. McKinley*, 764 S.E.2d 303, 313 (W. Va. 2014).

[11] Limiting *C.C.* to its facts heeds the warning of Justice Hutchinson in his partial concurrence and dissent, which advised that "lawyers not rely upon the majority's legal discussion" regarding negligent supervision.   *Id.* at 783. Justice Hutchinson offers several explanations as to why a negligent supervision claim can be established by intentional employee conduct, including that (1) the majority improperly interpreted and weighed dicta in *Taylor*, 538 S.E.2d 719, (2) the majority focused on the employee's conduct, when a claim for negligent supervision focuses on the employer's negligence, (3) the *Restatement (Second) of Agency* states that a negligent supervision claim encompasses intentional tortious behavior by employees, and (4) other courts have carefully outlined that intentional tortious behavior by employees can establish a claim for negligent supervision.

16

sufficiently stated a claim for negligent supervision, as it is alleged that JCC knew of prior instances of use and threats of excessive force by Deputy Casto and failed to take reasonable corrective supervisory action, resulting in Deputy Casto violating Mr. Merritt's right to be free from excessive force.  It is of no consequence that Deputy Casto's actions were intentionally tortious.

In summary, the negligent hiring, retention, training, and supervision claims contained in Count II set forth sufficient factual allegations, if true, to show that the Plaintiff is entitled to relief and are not precluded by West Virginia Code §§ 29-12A-1, *et seq*.  The Defendants' motion to dismiss those claims should be denied.

### C.  Count III – Deprivation of Rights in Violation of 42 U.S.C. § 1983

The Plaintiff alleges that both Defendants have violated his Fourth Amendment right to be free from excessive force.   Specifically, Deputy Casto was acting under the color of law when he arrested Mr. Merritt and this violation occurred because of JCC's "express written or unwritten customs and policies."   (Compl. at ¶ 40.)   JCC, who took no action against Deputy Casto despite his prior instances of excessive force and threats, "created a custom of acceptance and encouragement of the use of excessive force."   (*Id.* at ¶ 43.)

The Defendants argue that the Plaintiff has failed to sufficiently plead that JCC had adopted an official policy or custom that proximately resulted in Mr. Merritt's injury, as required by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).   Mr. Merritt responds that the prior complaints of excessive force about Deputy Casto amount to liability for JCC's "failure to hire, train, supervise, and discipline its employees."   *Means v. Peterson*, 2:20-cv-561, 2020 WL 6702036, at *7 (S.D. W. Va. Nov. 13, 2020) (Goodwin, J.) (citing *Connick v. Thompson*, 563 U.S.

17

51, 61 (2011); *Bd. of the County. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)).   The Defendants further argue that the Plaintiff has failed to include sufficient detail about the prior complaints, and therefore has failed to establish that JCC had a custom that was a proximate cause of the Plaintiff's deprivation of rights.

42 U.S.C. § 1983 states, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable."   Congress intended § 1983 to apply to municipalities.   *Monell*, 436 U.S. at 690. A municipality is not liable for injuries "inflicted solely by its employees or agents," but rather, when the injury is caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."   *Id.* at 694.

The Fourth Circuit has stated that there are four ways that a policy or custom can result in a municipality's liability:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the decisions of a person with final policymaking authority;
> (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or
> (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)) (structure altered).   The Plaintiff argues that the improper supervision and training of Deputy Casto after JCC received actual knowledge of his propensity for excessive force amounts to either deliberate indifference or a widespread practice that constitutes a custom.   (Pl.'s Resp.

at 6.)  The Fourth Circuit has outlined the three elements for a § 1983 claim under a theory of failure to supervise or discipline:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)).  Here, the Plaintiff has sufficiently pled specific facts to establish each element.

As to the first element, a plaintiff can satisfy this element by showing that the conduct "at least has been used on several different occasions and . . . poses an unreasonable risk of harm of constitutional injury."  *Shaw*, 13 F.3d at 799.  The Plaintiff has stated that JCC had actual knowledge of the unreasonable risk of excessive force posed by Deputy Casto due to multiple prior complaints about Deputy Casto's use and threats of excessive force.   (Compl. ¶ 41.)

Regarding the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 799; *see also Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984) ("supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor").   The Plaintiff not only alleges that JCC's response was inadequate, but that JCC "took *no* remedial, adverse, or other action against Deputy Casto" and that this amounted to "acceptance and encouragement of the use of excessive force."   (Compl. at ¶ 43) (emphasis added.)

The third element has been sufficiently pled because the Plaintiff alleges that it was the natural consequence of this practice of acceptance, in the face of Deputy Casto's conduct, that led to Mr. Merritt being subjected to excessive force on January 13, 2021.

The Defendants argue that Mr. Merritt's failure to outline the specifics of the prior complaints renders his allegations insufficient and precludes his *Monell* claim.   However, at this stage, the plaintiff is only required to assert a claim that is "plausible."   Accepting the allegations in the Complaint as true, the fact that there were prior complaints about Deputy Casto's use and threats of excessive force is sufficient.   Although his allegations do not currently amount to proving "deliberate indifference", his pleading "is sufficient to allow him the opportunity to attempt to prove his claim under that standard."   *Smith v. Popish*, 5:17-CV-129, 2017 WL 4401633, at *5 (N.D. W. Va. Oct. 2, 2017) (holding that allegations of prior complaints of excessive force and the municipalities' knowledge of those complaints is enough to survive a motion to dismiss); *see also Gaylord v. City of Beckley*, No. 5:18-CV-00177, 2018 WL 3581093, at *4 (S.D. W. Va. July 25, 2018) (Berger, J.); *Poe v. Town of Gilbert, W. Va.*, 2:11-CV-00645, 2012 WL 3853200, at *10 n.3 (S.D. W. Va. Sept. 5, 2012) (Johnston, J.) (holding that it is "barely" sufficient when the plaintiff alleges a history of excessive force and violence and the municipality failed to take action despite knowing of this relevant misconduct).

Although the allegations contained in Count III seemingly focus on a failure to supervise, the Plaintiff also has sufficiently pled a failure to train.   To establish municipal liability for failure to train, a plaintiff must show that the municipality's failure to train amounted to deliberate indifference.   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).   It is only when, "in light of the duties assigned to specific officers or employees, the need for more or different training is

so obvious, and the inadequacy so likely to result in the violation of constitutional rights, can a municipality reasonably be said to have been deliberately indifferent to that need." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) (citing *City of Canton*, 489 U.S. at 390).

The Plaintiff's failure to train claim survives for the same reason his failure to supervise claim survives.   By pleading that Deputy Casto had a history of prior use and threats of excessive force and JCC knew of this history and failed to take any action in response, the Plaintiff has plausibly pled his *Monell* claim under a theory of failure to train.   For the reasons stated above, dismissal of Count III is inappropriate at this stage of the litigation.

### D.  Count IV – State Law Claims for Outrage

The Plaintiff alleges that Deputy Casto's conduct amounted to "gratuitous acts of violence and were in no way justified."   (Compl. at ¶ 48.)   Moreover, it is alleged that Deputy Casto's conduct during the arrest was intentional and outrageous, going beyond "all bounds of decency." (*Id.* at ¶ 51.)   As a result, the Plaintiff states he has suffered mental anguish, emotional distress, and physical pain.   (*Id.* at ¶ 52.)   Mr. Merritt alleges that Deputy Casto is liable for his conduct, and that JCC is liable under a theory of vicarious liability.

JCC argues that it enjoys statutory immunity for its employees' intentional torts, pursuant to *Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007).   In response, the Plaintiff agrees that "Count IV should only pertain to Deputy Casto."   (Pl.'s Resp. at 4.)   Count IV will be dismissed as to JCC.

### E.  Count V – Punitive Damages

The Complaint repeatedly requests punitive damages.   Punitive damages are requested as relief from both Defendants as to the conduct alleged in Counts III and IV.   (Compl. at ¶¶ 45, 53.)

21

Count V is solely a claim for punitive damages against Deputy Casto. The *ad damnum* clause broadly requests punitive damages.   JCC argues that an award of punitive damages against JCC is precluded by West Virginia Code § 29-12A-7(a).   The Plaintiff agrees that punitive damages cannot be recovered against JCC.   (Pl.'s Resp. at 4.)   Therefore, insofar as the Complaint asserts a claim for punitive damages against JCC, it will be dismissed.

The Defendants continue to argue that "West Virginia does not recognize a separate cause of action for punitive damages."   *Davis v. Milton Police Dept.*, 3:20-cv-36, 2020 WL 2341238, at *8 (S.D. W. Va. May 11, 2020) (Chambers, J.) (citing *S.F. v. Higginbotham*, 2:18-cv-94, 2019 WL 286746, at *3 (N.D. W. Va. Jan. 22, 2019).   Although the Defendants are correct that Count V seeks a form of relief rather than stating an independent cause of action, that does not require its dismissal.   The Court has found that underlying causes of action alleged in other counts are not subject to dismissal, and so the form of relief sought in Count V may likewise proceed.   Of course, the Plaintiff would be unable to obtain the relief sought without proving the underlying legal claims and the type of conduct necessary to garner punitive damages.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Partial Motion to Dismiss* (Document 7) be **GRANTED in part**, insofar as it dismisses (1) a claim for vicarious liability under Count II, (2) any claim contained in Count IV against Jackson County Commission, and (3) any punitive damages relief against Jackson County Commission, and otherwise be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     March 21, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA